## Commonwealth v. Shore

*Philip P. Kalodner*, for appellant.

*Walter E. Alessandroni*, Atty. General, *Frederick G. Antoun*, Deputy Atty. General and *Charles D. Cowley*, for Commonwealth.

KREIDER, P. J., September 30, 1966.—This is an appeal from an adjudication and order of the Insurance Commissioner of Pennsylvania revoking the licenses issued to respondent-appellant, Arnold Shore, as agent, broker and excess broker. In the adjudication which followed the hearings held by the commissioner, Shore was found to have violated sections 606, 607, 632 and 639 of The Insurance Department Act of May 17, 1921, P. L. 789, as amended, 40 PS §1. Subsequently, a supersedeas was granted staying the adjudication and order of the Insurance Commissioner.

Appellant's exceptions raise questions concerning the following:

(a) The procedure followed by the Insurance Commissioner in allegedly denying him the right to file briefs and make oral argument before the adjudication was filed; (b) whether the findings of fact and conclusions of law are supported by substantial evidence, and (c) whether the revocation of appellant's licenses was too severe a penalty and, therefore, an abuse of discretion on the part of the commissioner.

In the adjudication, it is stated (p. 4):

"The core of the Commonwealth's complaints against

Respondent revolve around the allegation that he was active in the sale of insurance by Delaware National Insurance Company and carried on the business of insurance through that Company before its admission to do business in this Commonwealth or elsewhere, and, in fact, prior to the time that the corporation was even actually formed".

Section 33 of The Administrative Agency Law of June 4, 1945, P. L. 1388, 71 PS §1710.33, provides:

"All parties shall be afforded opportunity to submit briefs prior to adjudication. Oral argument upon substantial issues may be heard by the agency".

The initial hearing was held on November 12, 1964, followed by a final hearing on December 4, 1964. The adjudication was not filed until February 9, 1965, more than two months following the last hearing. Appellant's counsel was the Honorable Theodore S. Gutowicz,[1] a former Insurance Commissioner of the Commonwealth of Pennsylvania, who represented him throughout the hearings and thereafter, until February 23, 1965, when he withdrew as counsel. The conclusion is inescapable that had appellant desired to make oral argument and submit a brief prior to the adjudication, he had ample opportunity and that he decided not to do so.

The second group of exceptions are directed to the findings of fact in the adjudication and allege generally that certain of those findings are not supported by substantial evidence. The adjudication determined that appellant had:

1. violated section 639, 40 PS §279, of The Insurance Department Act of 1921, as amended, in that he has evidenced such conduct as would disqualify him from initial issuance of a license as agent, broker and excess broker under the provisions of sections 603, 622 and 624 of said act;

---

[1] Now a member of the County Court of Philadelphia.

2. violated section 632, 40 PS §272, in that he participated in the issuance and delivery of insurance policies and did secure and aid in securing in the placement of insurance and effecting contracts of insurance with an insurance company not of this Commonwealth and not authorized to do business in this Commonwealth;

3. violated section 606, 40 PS §236, in that he did represent himself as agent of Delaware National Insurance Company, which company had not, at the time of said representations, nor thereafter, complied with the laws of this Commonwealth;

4. violated section 607, 40 PS §237, in that he did, as owner and representative of Delaware National Insurance Company, offer within this Commonwealth and did otherwise sell, procure and obtain policies, certificates and applications for insurance on behalf of a fictitious and nonexisting insurance company on and before April 17, 1964.

The testimony adduced by the Insurance Department is not in substantial dispute. Investigators for the department, accompanied by the Pennsylvania State Police, interviewed Raymond James Leslie, who was president of the Carver Loan and Investment Company, Inc., Carver Consumer Discount Company and the Columbia Acceptance Corporation, with offices in Philadelphia, Pa. These companies deal in loans and purchasing of sales and financing contracts from dealers who have obtained same from their customers to whom they have sold goods on credit. Mr. Leslie testified he was interested in fire insurance coverage on the purchases of consumer goods, the term of such insurance being from the time of purchase to the final payment. It was agreed that Leslie should insert the names and addresses of his customers in the policies that were to be furnished to him and remit the premiums once a month to the company. Initially, Les-

lie was supplied with certificates of insurance which bore the name "Delaware National Insurance Company" at the top and were signed: "Eagle Excess Corporation, Broomall, Pa., By Arnold Shore", whose title was not stated. Thereafter, other certificates were issued which contained the name of the Delaware National Insurance Company at the top and bore only the words: "By: Arnold Shore" at the end. Later, a formal type of policy was issued in the name of "Delaware National Insurance Company, a Stock company, Newark, Delaware", and signed by John H. Herring, president, and Arnold Shore as secretary, and used by Leslie in the manner heretofore indicated. It was admitted at the hearing held by the commissioner that Herring was hired by Shore and was president in name only. A series of checks from Leslie's company, Columbia Acceptance Corporation, payable to Delaware National Insurance Company covering monthly remittances, was introduced in evidence.

The Commonwealth also introduced a certification by the Deputy Insurance Commissioner of the State of Delaware which set forth that as of September 14, 1964, the Delaware National Insurance Company had not been licensed in the State of Delaware. There was documentary evidence, however, that this company was organized under the General Corporation Laws of Delaware on April 17, 1964. At no time has the Delaware National Insurance Company been licensed to do business in Delaware, Pennsylvania or in any other State.

Appellant Shore testified that he had entered into an agreement with Samuel C. Nissenbaum to form a company to be known as Delaware National Insurance Company and that together they contacted counsel in Delaware and commenced to organize the company, which was formed, as above stated, as of April 17, 1964, but, according to Shore, despite almost daily inquiry for about four or five months, no approval was received

in regard to the certificate of authority from the Insurance Commissioner of Delaware.

Shore further testified that after meeting with Leslie, Nissenbaum insisted that Leslie's business be written through the Delaware National Insurance Company. Shore said he protested because "the company at that time was not in existence, and I knew what the consequences would be if something like that would be done", but that Nissenbaum said to him, "Don't worry, if anything comes up; we'll take care of it". Shore said he had no way of stopping business from being written by the Delaware National Insurance Company and, therefore, he went ahead and took steps to protect the "policy holders" of the Delaware National Insurance Company. To accomplish this, he said he communicated with the Reliance International Insurance Company, Ltd., of Nassau, British West Indies, and informed that company what he and Nissenbaum contemplated doing. This letter, which appears in footnote 2, was dated March 2, 1964. It was on the letterhead of the Eagle Excess Corporation and was signed by Arnold Shore. The Eagle Excess Company is incorporated and is licensed to do business in Pennsylvania.[2]

---

[2] "We are anticipating writing a form of industrial fire insurance in the above company, which we are advised will be licensed about March 15, 1964. The coverage will be Fire & E.C. on household furniture for a period covering the loan made to purchase said furniture.

"This book of business is to be effective as of February 1, 1964, and we would like to back date, provided we can warrant no losses prior to actual date of issue.

"Since Delaware National has not yet been approved, we would appreciate an agreement for 100% reinsurance until such time as the approval is received at which time we would reassume all liability under this agreement.

"Your prompt reply will be appreciated as the entire transaction rests on your decision.

    "Yours truly,

      "Eagle Excess Corporation"

On March 11, 1964, Frank H. Hoskins, vice-president of the Reliance International Insurance Company, Ltd., wrote to Shore and advised him that he was agreeing in essence to Shore's proposal of March 2, 1964.

The financial statement submitted to appellant by the Reliance International Insurance Company, Ltd., of Nassau, was not certified by anyone, but Shore said its assets "must have been somewhere in the neighborhood of $300,000". The Insurance Commissioner's Adjudication (pp. 4-5), however, reveals that a group of 263 "policies" issued by the nonlicensed Delaware National Insurance Company "indicate coverage in the amount of $495,000 and premiums in excess of $4,-500.00". There were 29 additional policies which were given to Corporal Jones on September 9, 1964, at the office of Mr. Seidman, who was the attorney for the Carver Loan and Investment Company and Raymond J. Leslie. The documents contained facsimile signatures of Arnold Shore, secretary and John H. Herring, president, as above stated, and indicated the insurers as Delaware National Insurance Company, a stock company of Newark, Delaware. The adjudication states that "the documents bear various effective dates, e.g., policies numbered consecutively from 10060 through 10074 bear the effective date of April 1, 1964. Other policies bear other and later effective dates". According to the tabulation of the court, there are at least 36 of these "policies" whose effective date is April 1, 1964, and are numbered generally, beginning with 10048 through 10086, excluding three policies, nos. 10080, 10081 and 10082.

Shore testified that on June 8, 1964, he received a letter from the Reliance International Insurance Company of Nassau, B.W.I., informing him that "all liabilities of the Reliance International Insurance Company, Ltd. had been assumed by the Standard

American Indemnity Corporation of Panama City, Panama". He said the latter company is *not* registered to do business in Panama, and that its financial statement was not certified, but that it was attested by the Vice Consul of the United States in Panama City.

Appellant insists that despite his testimony at the hearing in which he admitted he had violated the insurance company law, he did not violate any of the sections of the act relied upon by the commissioner. Specifically, appellant says he did not violate section 632, which imposes a penalty for placing insurance in an unauthorized company. He claims that section is obviously inoperable as to him, since he is an "excess insurance broker" specifically entitled to place insurance in a company not authorized to do business in Pennsylvania under section 624 of the Insurance Department Act, 40 PS §254.

Appellant also contends he did not violate section 606, which imposes a penalty on any person who by circular letter or any other way or manner represents or advertises himself as the agent of an insurance company which has not complied with the laws of this State. Again, appellant contends that since he was a qualified and licensed excess broker, he was entitled to sell advertising in accordance with the provisions of section 624 of the act, supra.

Finally, appellant asserts that he did not violate section 607, which imposes a penalty upon any one who has anything to do with placing insurance ". . . for or on behalf of any spurious, fictitious, nonexisting . . . insurance company. . . ." He says that the Delaware National Insurance Company, despite the admitted fact that it was never authorized or licensed to write insurance in Delaware, Pennsylvania or any other State, was nevertheless an existing company and, therefore, cannot be described as spurious, fictitious or nonexisting. Appellant also avers that he did not *place*

insurance in the Delaware National Insurance Company and that the insurance in question was actually placed with Reliance International Insurance Company of Nassau, British West Indies, and its successor, the *Standard American Indemnity* Corporation of Panama City, Panama.

Shore further argues that "since in fact the insured were *immediately* protected by policies in Reliance, the fact that they were given *a piece of paper bearing the wrong insurance company*'s name hardly prejudiced either their situation or any one else's. There is not one scintilla of evidence offered by the Commonwealth that there was any defect in Reliance nor any reason why insurance could not be placed in such company by appellant as a licensed excess broker". (Italics supplied.)

We do not agree with any of defendant's contentions above stated. We have grave doubt that the "certificate" or policy holders in the nonlicensed Delaware National Insurance Company were adequately protected by the reinsurance allegedly effected by Shore in the British West Indies and Panama companies. Appellant caused policy holders to believe that they were insured by the Delaware National Insurance Company, which, as heretofore stated, never did qualify in any State to transact the business of insurance. The mere fact that it came into existence as a corporation on April 17, 1964, in Delaware, the State of its creation, did not authorize it to deal in insurance as required by the laws of Delaware or of Pennsylvania. In offering to sell insurance and in issuing certificates of policies in the Delaware National Insurance Company, Arnold Shore clearly violated the letter and spirit of section 607, because the Delaware National Insurance Company was and still is not permitted to write insurance for the reason that it has not been authorized or licensed to do so. The act of incorporation,

as stated in the commissioner's brief, did not make this company operated by Arnold Shore and others an insurance company. It was legally incapable of contracting any insurance business until it received specific authority by way of a license or certificate of authority from the Insurance Department of Delaware.

Moreover, the existence or nonexistence of the so-called "reinsurance" has no bearing upon the question of whether appellant violated section 607. He merely states that there was reinsurance, but offered no convincing testimony as to the financial status of the reinsuring company. It also must be borne in mind that if reinsurance did actually exist, the parties to such a contract were a company *purporting* to be an insurance company but *operating without authority in law*, to wit, the Delaware National Insurance Company and the reinsurance company.

The policy holders who were the parties paying the premiums to Arnold Shore and the other operators of the Delaware National Insurance Company were not aware of such a reinsurance contract. No losses occurred and, therefore, no claims arose. The controlling fact is that appellant issued what purported to be insurance coverage in the Delaware National Insurance Company when there was no such coverage issued by that company. Consequently, he violated the insurance laws of this Commonwealth.

In view of the foregoing, we are of the opinion that the exceptions filed by Arnold Shore to the adjudication and order of the Insurance Commissioner must be dismissed and that all licenses issued to said Arnold Shore as agent, broker and excess broker by the Insurance Department of Pennsylvania should be revoked.

And now, September 30, 1966, the appeal of Arnold Shore from the adjudication and order of the Insurance Commissioner of Pennsylvania revoking the li-

censes issued to him as agent, broker and excess broker is dismissed, and said adjudication and order are affirmed.